******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* ANTUAN WHITE
(AC 39105)

Prescott, Elgo and Beach, Js.

*Syllabus*

The defendant, who previously had been convicted of, inter alia, various drug-related offenses following pleas of guilty pursuant to a plea agreement, appealed to this court from the trial court's denial of his motion to correct an illegal sentence. Under the plea agreement, the defendant was to be sentenced to a certain term of incarceration followed by a period of conditional discharge, provided that he appeared for sentencing on a certain date. The defendant failed to appear at the scheduled sentencing and, following his rearrest, ultimately received a sentence for a longer term of incarceration and special parole on the charges to which he previously had pleaded guilty. Thereafter, the defendant, as a self-represented party, filed a motion to correct an illegal sentence and also requested the appointment of counsel. L was appointed to represent the defendant for the purpose of determining, pursuant to *State* v. *Casiano* (282 Conn. 614), whether there was a sound basis for the appointment of counsel to prosecute the merits of the defendant's motion to correct an illegal sentence. After a hearing thereon, L stated his opinion that there was no sound basis for the defendant's claims, and the trial court agreed, finding that there was no sound basis for L's continued representation. In a subsequent hearing, the defendant, as a self-represented party, argued the merits of his motion to correct before the same trial judge, who denied that motion. On the defendant's appeal to this court, *held*:

1. The defendant could not prevail on his claim that that the trial court erred by not appointing counsel to represent him on the merits of his motion to correct an illegal sentence, which was based on his claim that reversal was required because L was acting as a neutral agent of the court rather than as his advocate in performing the review pursuant to *Casiano*:

   a. Although the precise, narrow issue of whether counsel was performing sufficiently as an advocate was neither presented to nor decided by the trial court, the broader question of whether counsel should continue to represent the defendant was squarely before that court, and, therefore, the defendant's claim was reviewable; there was a sufficient record on which to review the claim, and this court recognized the practical difficulty in requiring the precise claim to be expressly preserved while L was representing the defendant, which would have required L to have asserted that he was assuming an improper role and to have criticized his own conduct during the hearing.

   b. L fulfilled his professional obligation to the defendant and acted as an advocate for him within the dictates of *Casiano*, pursuant to which the defendant had a limited statutory right to representation by counsel in the context of a motion to correct an illegal sentence for the purpose of determining whether he had a sound basis for filing a motion to correct and, if such basis existed, for the purpose of preparing and filing such a motion; L presented a detailed and informed analysis of the issues that possibly could be pursued by a motion to correct, he raised and evaluated the issue that formed the basis of the defendant's written motion to correct, which claimed that his guilty pleas had been vacated by his failure to appear for sentencing, and L orally raised three additional potential claims, which he determined also did not constitute illegality in the defendant's sentencing.

2. The trial court properly determined that a sound basis did not exist for the claims raised in the defendant's motion to correct an illegal sentence and properly declined to appoint counsel to argue the merits of that motion; although the defendant claimed that L neglected to inform the trial court that the sentencing court had relied on an inaccurate date concerning a certain letter that the defendant allegedly had sent from prison prior to sentencing, the record demonstrated that both L and the trial court clearly had read the entire sentencing transcript, and the

sentencing court, which stated that the defendant had engaged in criminal behavior while on probation, that he had multiple convictions and that he was a danger to society, said nothing about the date or timing of the letter as a factor in determining the sentence, nor was there evidence in the record that L misstated the facts, or that the trial court here relied on any fundamentally inaccurate information in determining that there was no sound basis for the appointment of counsel.

3. The defendant's unpreserved claim that the trial court erred by not recusing itself from hearing the merits of his motion to correct because it functionally had predetermined the merits when it found no sound basis for continuing representation by counsel was unavailing; the defendant failed to prove actual bias, which was necessary to prove the existence of a constitutional violation under *State* v. *Golding* (213 Conn. 233), there was no plain error requiring reversal, as the trial judge was not prohibited from deciding related issues in the same case, and the integrity of the proceedings or the perceived fairness of the judicial system objectively had not been threatened so as to warrant the invocation of this court's supervisory authority.

Argued December 6, 2017—officially released June 19, 2018

*Procedural History*

Information, in the first case, charging the defendant with violation of probation, and information, in the second case, charging the defendant with two counts of the crime of possession of narcotics with intent to sell, and information, in the third case, charging the defendant with the crime of possession of narcotics with intent to sell, and informations, in the fourth and fifth cases, charging the defendant with the crime of interfering with an officer, brought to the Superior Court in the judicial district of New Haven, geographical area number twenty-three, where the defendant was presented to the court *Alexander, J.*, on an admission of violation of probation and on pleas of guilty; judgments revoking the defendant's probation and of guilty in accordance with the pleas; subsequently, the court, *Clifford, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Temmy A. Miller*, assigned counsel, with whom were *Catherine Spain*, assigned counsel, and, on the brief, *Owen R. Firestone*, assigned counsel, for the appellant (defendant).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, *John P. Doyle, Jr.*, senior assistant state's attorney, and *Karen A. Roberg*, assistant state's attorney, for the appellee (state).

*Opinion*

BEACH, J. This case turns on the issue of the appropriate role of assigned counsel in the context of a motion to correct an illegal sentence following *State* v. *Casiano*, 282 Conn. 614, 922 A.2d 1065 (2007). The defendant, Antuan White, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. The defendant claims that the trial court erred by (1) declining to appoint counsel to represent him on the merits; (2) denying his motion on the merits; and (3) deciding the merits of the motion to correct, despite having previously considered the merits of the issues during the hearing regarding the appointment of counsel. We disagree and affirm the judgments of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of the defendant's claims. They arise primarily from four separate proceedings: a plea hearing on November 22, 2005, arising out of five separate criminal dockets; a sentencing proceeding on December 13, 2006; a hearing on November 25, 2015, to determine whether counsel would be appointed to represent the defendant; and a hearing on the merits of the motion to correct, held on January 4, 2016.

On November 22, 2005, the defendant appeared before the trial court, *Alexander*, *J.*, and pleaded guilty to, inter alia, three counts of possession of narcotics with intent to sell in violation of General Statutes (Rev. to 2005) § 21a-277 (a). The defendant also admitted violating his probation in violation of General Statutes § 53a-32. The plea agreement was entered into pursuant to *State* v. *Garvin*, 242 Conn. 296, 699 A.2d 921 (1997).[1] An agreed upon sentence was stated on the record: the defendant was to be sentenced to twelve years of incarceration, suspended after seven years, and a three year period of conditional discharge. The defendant also agreed to the express condition that he appear for sentencing on January 13, 2006. The court advised the defendant that the guilty pleas were "permanent" and that the plea agreement was "off" if he didn't appear on January 13, and that his failure to appear would expose him to a sentence of up to fifty-three years. The defendant affirmed his understanding. The court found the defendant's pleas "to be voluntarily, knowingly made. There was a factual basis [for the pleas]. [The defendant] had the assistance of competent counsel. [His] pleas are accepted and a finding of guilty, finding of violation of probation is made." The court continued the matter to January 13, 2006, for sentencing.

The defendant, however, did not appear for sentencing on January 13, 2006. He was rearrested approximately seven months later. On December 13, 2006, the defendant appeared for sentencing before Judge Alex-

ander on the charges to which he had pleaded guilty on November 22, 2005.

During the sentencing hearing, the state discussed a letter that the Department of Correction had intercepted. It was allegedly written by the defendant prior to sentencing. The letter directed its recipient to a location where drugs and money could be found. The prosecutor stated that the letter was written on approximately October 31, 2006, several days after the defendant's arraignment on his rearrest.

At the sentencing, the court considered the defendant's "significant and serious criminal history," which led the court to conclude that the defendant was "not amenable . . . to any form of rehabilitation." The court then stated: "I understand the *Garvin* rule. I understand the nature of it. I am trying to adhere to what I believe the guidelines are in there. I know it would give the court the authority to impose a full maximum of fifty-three years. . . . [T]hat would be excessive. I recognize that. But I do recognize that this is an egregious case given the number of times [the defendant] has been convicted of the sale of narcotics, and his prior criminal history, and the circumstances that surrounded his being taken into custody for three failures to appear. *As well as what is alleged to be continuing criminal conduct that [the Department of] Correction believed worthy to bring to the attention of the state police in his attempts to reach out into the community to continue his pattern of narcotics association.*" (Emphasis added.) The court then sentenced the defendant to a total effective sentence of fifteen years of incarceration, to be followed by five years of special parole.

On July 21, 2014, the defendant, representing himself, filed a motion to correct an illegal sentence. He claimed that his sentence was unlawful because he had not been afforded the opportunity to withdraw his pleas after his failure to appear on January 13, 2006. The defendant also asked for the appointment of counsel pursuant to *Casiano*. Joseph Lopez, an attorney in the public defender's office, was appointed, on July 25, 2014, to represent the defendant for the purpose of the review mandated by *Casiano*.

On November 25, 2015, a hearing was held before the trial court, *Clifford, J.*, to determine whether a sound basis existed for the appointment of counsel to prosecute the merits of the defendant's motion to correct an illegal sentence. The court stated its understanding of the history of the case and invited Lopez to comment as to whether the defendant should be afforded a lawyer to represent him on his motion. Lopez said: "Under the *Casiano* case, when a public defender is appointed for the limited appearance, it is our rule to take a look at these, independently look at the claims to see if there is any sound basis. *It's the one and only*

*time that I'm aware of where I am not an advocate for my client, but really have to do an independent review first.* So it is an unusual situation. I just want my client to understand . . . that that's what the court requires me to do." (Emphasis added.)

Lopez then addressed the ground raised in the defendant's self-represented written motion to correct. He said that he did not think that the court had jurisdiction over the defendant's claim that his guilty pleas had been voided in their entirety by the defendant's failure to appear at the scheduled sentencing proceeding. The court surmised that perhaps the defendant misunderstood the import of Judge Alexander's telling the defendant during the plea hearing that if he did not appear for sentencing on January 13, "then your plea agreement is off"; the defendant may have interpreted the court's statement to mean that, if he did not appear for sentencing, he would "start again" because the prior agreement was "off." Lopez stated his opinion that this issue did not meet the jurisdictional requirements of a motion to correct an illegal sentence.

Lopez then addressed possible claims that had not been raised in the defendant's written motion to correct. Although the record is not clear as to who formulated these claims, it is clear that they were developed prior to the hearing either through consultation between Lopez and the defendant or by Lopez himself. In any event, Lopez discussed a possible claim that Judge Alexander had relied on inaccurate information in the course of the sentencing hearing, to wit, that the state had misrepresented the date of the intercepted letter. Lopez opined that the court had jurisdiction over this claim, but that the record did not show that Judge Alexander had relied on the incorrect information in sentencing the defendant. Lopez accordingly expressed his opinion that there was not a sound basis for this claim.

Lopez also stated his opinion that the court did not have jurisdiction to consider a claim that Judge Alexander improperly became aware, prior to sentencing, of an offer of ten years of incarceration, which offer had been mentioned in the intercepted letter, and that she was, therefore, prohibited from sentencing the defendant because she had become aware of extraneous information. Finally, Lopez also stated his opinion that the court did not have jurisdiction to consider the defendant's claim that Judge Alexander properly could rely only on the defendant's failure to appear in increasing his sentence. Lopez concluded: "My opinion, which doesn't matter, is that [the defendant] got a heavy sentence, but my job here under . . . *Casiano*, that's none of my—I have no standing. It's not up to me to decide sentences. It's up to me to look [if] there [is] any illegality in the sentencing and I don't see it and I tried looking for something."

The court then ruled only on the issue of appointment

of counsel: "I'm ruling on the *Casiano* claims right now. I'm not ruling on the motion substantively." It restated the opinions of Lopez regarding the soundness of the defendant's claims and stated that, having independently examined the claims, it agreed that the claims lacked a sound basis. The court stated: "So even under *State* v. *Francis*, [148 Conn. App. 565, 86 A.3d 1059 (2014) (*Francis I*), rev'd, 322 Conn. 247, 140 A.3d 927 (2016)], I certainly think counsel has explained [his] reasons to you why [he] feel[s] [he] should not be filing a full appearance . . . after [he] diligently reviewed all of the relevant parts of the record and case law, and I agree with [him] under my understanding and research of the case law also." The court ruled that there was not a sound basis for continued representation and told the defendant that he could argue the merits of the motion himself or retain private counsel.

The defendant attempted to augment his arguments, and the court and the defendant engaged in a brief colloquy in which the court said that it disagreed with the defendant's claims. Lopez volunteered that if the defendant thought of new claims, he should include them in another motion, and a public defender would be appointed to review those claims to determine whether there was a sound basis for them. The matter was continued to January 4, 2016, to allow the defendant time to review relevant transcripts and to prepare for his argument on the merits.

On January 4, 2016, the defendant argued the merits of his motion to correct, again before Judge Clifford. The defendant did not move for Judge Clifford to recuse himself from deciding the merits of the defendant's claims. The court summarized the November 25, 2015 proceeding, reiterating the defendant's arguments as posed at that time by Lopez. The defendant then presented the court with a letter he had written in which he set forth his arguments. He argued in the letter that Judge Alexander had relied on inaccurate information in the sentencing proceeding. He stressed that the letter that he had sent in October, 2006, was dated October 25 rather than October 31. The defendant noted that October 25 predated his arraignment on October 27, 2006, and, therefore, should not have been used as a basis to enhance his sentence; he suggested that Judge Alexander had considered that the defendant continued to engage in criminal conduct, even after his arraignment. The court also reviewed a second letter presented by the defendant, which argued that, in its application of *Garvin*, the sentencing court should not have considered a police report of an unrelated arrest because there was nothing in the record to indicate that the report had minimal indicia of reliability.[2]

Referring to the topic of the intercepted letter, the defendant argued orally that the date of the intercepted letter made a difference because the sentencing court

imputed "egregious misconduct" to him after his arraignment, although the intercepted letter actually had been written prior to arraignment.[3] The court, however, noted that the sentencing court had set forth many reasons for the defendant's sentence, and that the sentencing court had mentioned the letter only briefly. The court concluded that it had jurisdiction over this claim but denied the claim on the merits.

The defendant also argued orally that the sentencing court improperly considered a police report describing the defendant's arrest in August, 2006, because the report had no indicia of reliability. Assuming that it had jurisdiction over this claim, the court stated that the record showed that Judge Alexander did not find that the defendant had violated the *Garvin* agreement by committing another crime. Rather, the court concluded that the defendant had violated the *Garvin* agreement by not appearing at his sentencing hearing in January, 2006. The court explained that his failure to appear exposed the defendant to fifty-three years of incarceration. The defendant argued that the sentencing court could not properly have found a *Garvin* violation without holding an evidentiary hearing, but the court observed that the sentencing court properly found a *Garvin* violation simply by virtue of the defendant's failure to appear at the sentencing hearing. The defendant stated that his failure to appear had not been within his control, because he had been addicted to drugs. The court rejected this argument. The court then concluded that it had jurisdiction over the defendant's *Garvin* claim, but denied the defendant's motion to correct, concluding that Judge Alexander had applied *Garvin* properly. This appeal followed.

I

The defendant first claims that the trial court erred by not appointing counsel to represent him on the merits of his motion to correct an illegal sentence. Specifically, he claims that reversal is required because the public defender was acting as a neutral agent of the court rather than as his advocate in performing the *Casiano* review. We disagree.

A defendant does not have a constitutional right to representation by counsel in the context of a motion to correct an illegal sentence, but does have a limited statutory right to counsel. See *State* v. *Francis*, 322 Conn. 247, 262–63, 140 A.3d 927 (2016) (*Francis II*); see also *State* v. *Casiano*, supra, 282 Conn. 620. Section 51-296 (a) of the General Statutes provides in part: "In any criminal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender, assistant public defender or deputy assistant public defender to represent such indigent defendant . . . ." In *State* v. *Casiano*, supra, 282 Conn.

624, our Supreme Court held that the phrase "any criminal action" in § 51-296 (a) encompassed a motion to correct an illegal sentence. The court held, however, that "a motion to correct an illegal sentence will not be appropriate in every case, and, therefore, we do not believe that the legislature intended for appointed counsel to be required to file such a motion even if it is frivolous or improper. . . . [A] defendant has a right to the appointment of counsel for the purpose of determining whether a defendant who wishes to file such a motion has a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." Id., 627–28.

In *Francis I*, this court held that the procedures outlined in *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), were required to be followed in determining whether counsel would be permitted to withdraw after conducting a preliminary review. *Francis I*, supra, 148 Conn. App. 588–90. Our Supreme Court reversed that determination in *Francis II*, which was decided after the defendant's *Casiano* hearing in this case. *Francis II*, supra, 322 Conn. 251. That court held "that the *Anders* procedure is not strictly required to safeguard the defendant's statutory right to counsel in the context of a motion to correct an illegal sentence." Id. The court then clarified its holding in *Casiano*, stating: "[W]hen an indigent defendant requests that counsel be appointed to represent him in connection with the filing of a motion to correct an illegal sentence, the trial court must grant that request for the purpose of determining whether a sound basis exists for the motion. . . . If, after consulting with the defendant and examining the record and relevant law, counsel determines that no sound basis exists for the defendant to file such a motion, he or she must inform the court and the defendant of the reasons for that conclusion, which can be done either in writing or orally. If the court is persuaded by counsel's reasoning, it should permit counsel to withdraw and advise the defendant of the option of proceeding as a self-represented party." (Citation omitted; footnote omitted.) Id. 267–68.

Initially, the state argues that the defendant's claim regarding the appointment of counsel should not be reviewed because it was not raised in the trial court. The state notes that the defendant did not claim during either the *Casiano* hearing or the hearing on the merits that Lopez failed properly to act as an advocate for the defendant. The defendant argues, however, that the claim is viable for several reasons: it is a subset of the broader claim that there was a sound basis for continuing the representation by counsel, and, in any

event, it is reversible pursuant to the plain error doctrine and the court's supervisory authority.

In the unique circumstances of this case, we exercise our discretion to review the claim for the following reasons. We have a sufficient record on which to consider the claim. Although the precise, narrow issue of whether counsel was performing sufficiently as an advocate was neither presented to nor decided by the trial court, the broader question of whether counsel should continue to represent the defendant was squarely before the court. See, e.g., *State* v. *Daniel W. E.*, 322 Conn. 593, 609–10 n.8, 142 A.3d 265 (2016); *Rowe* v. *Superior Court*, 289 Conn. 649, 661–63, 960 A.2d 256 (2008). Moreover, at the time, the defendant was represented by Lopez. In order for Lopez to preserve the claim, he would have had to assert that he was assuming an improper role. In this somewhat awkward circumstance, we recognize the practical difficulty in requiring that the precise claim be expressly preserved because counsel, in order to assert the claim, would in effect have to criticize his own conduct.

The defendant argues that Lopez' statement that he was not acting as an advocate for the defendant was fatal to the integrity of the proceeding. He claims that the requirement in *Francis I* that counsel act as "an active and conscientious advocate" in conducting a "first tier" review required Lopez to function as the defendant's counselor and legal representative rather than as a neutral officer of the court. He contrasts this duty with the language used by Lopez in introducing his remarks; Lopez said that, in this instance, he was performing an independent review and not acting as an advocate. The defendant also notes, correctly, that *Francis II* did not overrule the requirement of *Francis I* that appointed counsel represent the client.

The flaw in the defendant's position is that the record reveals that, despite the label he employed, Lopez actually acted as an advocate for the defendant within the dictates of *Casiano* and *Francis II*. Lopez was appointed to represent the defendant on July 25, 2014. At the hearing on November 25, 2015, at which he said that he was not advocating for his client, he presented a detailed and informed analysis of the issues that possibly could be pursued by a motion to correct. Not only did he raise and evaluate the issue that formed the basis of the defendant's written motion to correct, which claimed that the guilty pleas had been vacated by his failure to appear for sentencing, but he also orally raised the three additional claims. We infer from the record that Lopez conferred with his client regarding these claims; he clearly conferred with the defendant during the hearing. Throughout the proceeding, Lopez also referred to specific pages of transcripts of prior proceedings. Lopez stated that "my job here under *Casiano* [is] to look [at whether there was] any illegality in the

sentencing and I don't see it and *I tried looking for something*." (Emphasis added.)

It is instructive to compare what Lopez actually did with the standards set forth in *Francis II*, in which our Supreme Court concluded that "when an indigent defendant requests that counsel be appointed to represent him in connection with the filing of a motion to correct an illegal sentence, the trial court must grant that request for the purpose of determining whether a sound basis exists for the motion. . . . *If, after consulting with the defendant and examining the record and relevant law*, counsel determines that no sound basis exists for the defendant to file such a motion, he or she must inform the court and the defendant of the reasons for that conclusion . . . . If the court is persuaded by counsel's reasoning, it should permit counsel to withdraw and advise the defendant of the option of proceeding as a self-represented party." (Citation omitted; emphasis added; footnote omitted.) *Francis II*, supra, 322 Conn. 267–68.

Lopez quite plainly performed his duties as required, professionally and with candor to the court. Lopez' apology to his client—for not advocating his client's ultimate position that counsel should not be permitted to withdraw—is understandable in light of the somewhat dichotomous role of counsel who are appointed pursuant to *Casiano*. Perhaps the role can best be described by requiring traditional standards of advocacy in the preparatory stage, including thorough legal and factual review of the record with an eye to developing a plausible favorable position, but also requiring objective candor in presenting the client's best claims to the court and his client. A client may well not be pleased by his attorney's presentation of a negative appraisal, but this tension results from the dual nature of the role required by *Casiano* and *Francis II*. On the record before us, we hold that counsel fulfilled his professional obligation as set forth by our Supreme Court in *Francis II*. Accordingly, the defendant's claim that the trial court erred by failing to appoint counsel to argue his motion to correct fails.

## II

We next briefly consider the defendant's arguments that the trial court improperly determined that a sound basis did not exist for the defendant's claims so that counsel should be appointed. The defendant argues that Lopez neglected to bring to Judge Clifford's attention a reference in the sentencing transcript to the inaccurate date ascribed to the intercepted letter, and that both Lopez and Judge Clifford therefore relied on inaccurate information in failing to find a sound basis for continued representation by counsel. Both Lopez and Judge Clifford, however, quite clearly read the entire sentencing transcript. As to the possibility of reliance on inaccurate information, the sentencing court, in its recitation of

reasons for imposing its sentence, stated that the defendant had engaged in criminal behavior while on probation, that he had multiple convictions, and that he was a danger to society. The sentencing court said he had no respect for the court system. The sentencing court added a reference to the "alleged . . . continuing criminal conduct that [the Department of] Correction believed worthy to bring to the attention of the state police in his attempts to reach out into the community to continue in his pattern of narcotics association.§ The sentencing court said nothing about the date or timing of the letter in which the defendant urged further criminal activity.

In the "sound basis" hearing before Judge Clifford, Lopez summarized the comments of the sentencing court and, as to this issue, concluded by saying, "I don't think that we have any basis to claim that Judge Alexander *may have* [*homed*] *in on an inaccurate date and used that in fashioning her sentence.*" (Emphasis added.) Agreeing with Lopez in principle, Judge Clifford, perhaps somewhat mistakenly, said that when Judge Alexander stated the factors she considered in sentencing, she did not mention the letter. It is, of course, true that she did not mention the *date* of the intercepted letter. Although perhaps there was some lack of precision, it is clear that nothing in the record indicates that the sentencing court relied on the *date* of the letter, that Lopez misstated the facts, or that Judge Clifford relied on any fundamentally inaccurate information.[4]

Additionally, the defendant briefly claims that Judge Clifford merely "rubber-stamped" Lopez' opinions and did not reach his own conclusions. This argument is contradicted by the hearing transcript, which shows that Judge Clifford addressed each of the defendant's claims in turn and stated his reasoning for finding no sound basis. As noted previously, Judge Clifford was not required to conduct a full evidentiary review at that time; rather, at that point the court was to decide only whether it was persuaded by Lopez' reasoning after independent review. *Francis II*, supra, 322 Conn. 268.[5] After considering Lopez' presentation and after its independent review, the court concluded that there was not a sound basis.

We conclude that the court did not err in its decision regarding the appointment of counsel.

### III

The defendant claims that the court erred by not recusing itself from hearing the merits because it functionally had predetermined the merits when it found no sound basis for continuing representation by counsel. We disagree.

The issue was not raised, and thus not preserved, in the trial court. The defendant does not argue that it

was preserved, but rather asks us to reverse under *State v. Golding*, 213 Conn. 233, 567 A.2d 823 (1989), the plain error doctrine, or this court's supervisory authority.

We conclude that this claim does not merit reversal under *Golding*.[6] In order to prove a *constitutional* violation, a litigant must prove *actual* bias. *State* v. *Canales*, 281 Conn. 572, 593–95, 916 A.2d 767 (2007). The record reveals no hint of actual bias or, objectively, the appearance of bias, and none is suggested by the defendant. The defendant's claim fails the third prong of *Golding* because the claimed constitutional violation does not exist.

There is no plain error[7] requiring reversal because "opinions that judges may form as a result of what they learn in earlier proceedings in the same case 'rarely' constitute the type of bias, or appearance of bias, that requires recusal." *State* v. *Rizzo*, 303 Conn. 71, 121, 31 A.3d 1094 (2011), cert. denied, 568 U.S. 836, 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012). A judge is not prohibited from deciding related issues in the same case. See id., 119–21. Additionally, we decline to exercise our supervisory authority; the integrity of the proceedings or the perceived fairness of the judicial system objectively has not been threatened. See *State* v. *Elson*, 311 Conn. 726, 764–65, 91 A.3d 862 (2014).

The judgments are affirmed.

In this opinion the other judges concurred.

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Yates*, 169 Conn. App. 383, 387 n.1, 150 A.3d 1154 (2016), cert. denied, 324 Conn. 920, 157 A.3d 85 (2017).

[2] Both letters apparently served the purpose of trial memoranda.

[3] The underlying premise seems to be that a letter urging further criminal conduct would display contempt for the judicial authority if written after, but not before, arraignment.

[4] Additionally, we fail to see how any discrepancy of four days in the date the letter was written could possibly have affected the sentence, regardless of whether the letter was written before or after the arraignment.

[5] The defendant also argues in his brief that both Lopez and the trial court applied an erroneous standard, claiming that the standard should be whether the claim is "nonfrivolous." This claim was not preserved, is not of constitutional dimension and does not result in any manifest injustice. The relevant case law uses the term "sound basis," and all participants in the trial court referred to "sound basis." We decline to review the unpreserved claim.

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Emphasis omitted; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40, as modified by *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).

[7] "[An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." (Emphasis omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 812, 155 A.3d 209 (2017).