******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* JOHN YATES
(AC 35731)

Lavine, Prescott and Mihalakos, Js.

*Argued December 11, 2014—officially released November 22, 2016\**

(Appeal from Superior Court, judicial district of Waterbury, Damiani, J. [judgment]; Fasano, J. [motion to correct illegal sentence].)

*John Yates*, self-represented, the appellant (defendant).

*Jennifer F. Miller*, deputy assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *Eva B. Lenczewski*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, John Yates, appeals from the judgment of the trial court dismissing his motion to correct an illegal sentence. The defendant claims on appeal that the court improperly (1) permitted appointed counsel to withdraw without first requiring him to articulate the reasoning behind his determination that there was no sound basis for the motion to correct an illegal sentence, and (2) concluded that his sentence had not been imposed in an illegal manner. We conclude that only the form of the judgment is improper, and, accordingly, we reverse the judgment dismissing the defendant's motion to correct an illegal sentence and remand the case to the trial court with direction to render judgment denying the defendant's motion.

The record reveals the following relevant facts and procedural history. The defendant was arrested and charged in connection with an April 10, 2010 armed robbery of a liquor store. On October 4, 2010, pursuant to a plea agreement reached in accordance with *State v. Garvin*, 242 Conn. 296, 699 A.2d 921 (1997),[1] the defendant entered guilty pleas to one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) and, on a part B information, to being a persistent dangerous felony offender in violation of General Statutes § 53a-40.[2] In accordance with the *Garvin* agreement, the court, *Damiani, J.*, agreed to sentence the defendant to eighteen years of incarceration, suspended after fourteen years, with the right to argue down to a sentence of eighteen years, suspended after twelve years. The court, however, also advised the defendant that he remained exposed to a possible sentence of up to forty-two and one-half years, of which ten years was mandatory, and/or a fine of $15,000 if he violated the terms of the *Garvin* agreement either by failing to appear at the sentencing hearing, which was scheduled for December 7, 2010, or by being arrested with probable cause on any new charges prior to his sentencing. The defendant acknowledged that he understood the terms of the plea agreement.[3]

Nevertheless, the defendant did not appear for his sentencing hearing on December 7, 2010. Furthermore, three new arrest warrants were issued for the defendant regarding three robberies that he allegedly committed on November 2, 2010, after entering his plea.

The defendant eventually was apprehended, and the court sentenced him on the original robbery and persistent offender charges at a hearing on February 9, 2011. At that hearing, the court concluded that the defendant had violated both conditions of his *Garvin* agreement. First, the court found that the defendant had failed to appear at the originally scheduled December 7, 2010 sentencing hearing. Second, after the defendant waived his right to a *Stevens* hearing,[4] the court found on the

basis of its review of the three arrest warrants and their affidavits that there was probable cause to support the warrants.[5] On the basis of the defendant's failure to comply with the terms of his plea agreement, the court opted to impose a flat sentence of twenty-two years of incarceration, which, as a result, required the defendant to serve eight years more of unsuspended jail time than the originally agreed upon sentence under the *Garvin* agreement.

On March 18, 2011, the defendant was arraigned on three counts of robbery in the first degree arising from the three new arrest warrants. At that hearing, the following colloquy occurred between Judge Damiani and the defendant:

"The Court: [J]ust to make the record clear today, you were before me some time ago after you failed to appear for sentencing on a robbery of a liquor store, I believe, and the indicated sentence was something after—twenty after fourteen, I believe, and you had a right to argue down to twenty after twelve and you failed to show up in court, and then when they did apprehend you, they had these three new robbery warrants against you, and when I sentenced you, I read the affidavits.[6] There was probable cause found by the judge who issued the warrants and I gave you twenty-two years on the old file and your lawyer explained to you, you could have had what they call a *Steven*'s hearing to force the state to bring in people to show there was probable cause for your new arrest. Remember that?

"The Defendant: Yes.

"The Court: And you don't want that hearing, right?

"The Defendant: No.

"The Court: Okay. And then I gave you the twenty-two years for the violation of the *Garvin* canvass, one for failing to appear in court—I'm going to the same place I told you, so don't be—be worried—and for the—the new arrests. Do you understand that?

"The Defendant: Yes.

"The Court: Okay. So now I asked the state—there was no sense in bringing these charges, but they bring the charges. The warrants were served against you on the three new robbery cases. The state has—we'll put on the record, they made contact with the victims. I'm going to put you to plea on each of these three robberies and I'm going to be giving you a year in jail on each robbery to run concurrent with each other for one year to serve on these three files—

"The Defendant: Yeah.

"The Court: —to be concurrent with the twenty-two years that I've—*I've already given you the time for these three robberies when I upped you from fourteen to twenty-two. Understood?*

"The Defendant: Yes." (Emphasis added; footnote added.)

The defendant then entered *Alford* pleas to each of the three robbery charges,[7] and the court rendered sentences in accordance with the preceding canvass. The defendant expressed his appreciation to the court for its fairness in sentencing.

Nevertheless, on December 14, 2012, the defendant filed a self-represented motion to correct what he now asserts is an illegal sentence. According to the defendant, his February 9, 2011 sentence was illegal because the court improperly considered as a sentencing factor the three pending arrest warrants and effectively sentenced him for the robberies alleged in those warrants, despite the fact that, at that time, he had not yet been arrested, charged, or arraigned on those alleged robberies.

The court, *Fasano, J.*, appointed a special public defender for the limited purpose of reviewing the defendant's motion to correct and determining if a sound basis for such a motion existed in accordance with *State* v. *Casiano*, 282 Conn. 614, 922 A.2d 1065 (2007).[8] On January 30, 2013, the defendant's appointed attorney, Joseph Yamin, reported back to the court. At that time, he indicated to the court that he had reviewed the defendant's motion and researched all the issues raised by the defendant therein. He then stated to the court that he did "not find a sound basis for going forward." The court asked if counsel had already spoken with the defendant, and Yamin responded in the affirmative, indicating that he had spoken with the defendant the day before. The court granted Yamin permission to withdraw his appearance at that time. The court instructed the defendant that he could proceed with the motion to correct by himself, and the defendant elected to continue to prosecute his motion as a self-represented party.[9]

The court held a hearing on the merits of the motion to correct an illegal sentence on March 13, 2013. One week later, the court issued a memorandum of decision in which it rejected the defendant's arguments that his sentence was imposed in an illegal manner, and concluded that the sentencing court's consideration of the pending arrest warrants fell well within the scope of information that could be considered by the court at sentencing, citing *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986). The court found that the sentencing court properly had increased the defendant's sentence by eight years more than the original plea agreement because the defendant had "fail[ed] to appear for sentencing, a *Garvin* violation, and his picking up three new arrest warrants for which the court found probable cause; arguably, a *Stevens* violation." The court further explained: "Though, technically, the

three arrest warrants had not been served at the time of the sentencing in question, and, therefore, were not new *arrests* as per *Stevens*, all parties were aware of the existence of the warrants (alleged street robberies to which the defendant had confessed) at the time of the sentencing; probable cause clearly existed for the arrests as was confirmed by the court, and the defense waived any hearing rights to question the existence of probable cause. To find, under these circumstances, that the technical difference between having three warrants pending and actually being arrested on the warrants places this case outside the parameters of *Stevens*, would be to exalt form over substance." (Emphasis in original.) Although Judge Fasano did not squarely address the defendant's suggestion that Judge Damiani, in effect, had sentenced him for the three robberies at that time, the court implicitly rejected that argument by noting that the defendant later pleaded guilty to the three robberies, for which he subsequently received concurrent sentences. Despite having addressed the merits of the defendant's motion to correct an illegal sentence, the court indicated that it was dismissing, rather than denying, the motion. This appeal followed.

I

The defendant first claims that the court improperly granted his appointed counsel's motion to withdraw his appearance without requiring him to articulate the reasoning behind his determination that there was no sound basis to pursue the defendant's motion to correct an illegal sentence. In his initial appellate brief, the defendant asked us to establish a new procedural right that would require an appointed counsel seeking to withdraw from representing a defendant regarding a motion to correct an illegal sentence to file a written memorandum with the court that outlines the claims raised by the defendant, the efforts counsel undertook to investigate the factual and legal bases for those claims, and the factual and legal bases for counsel's conclusion that the motion is frivolous. In response to our requests for supplemental briefing in light of our Supreme Court's recent decision in *State* v. *Francis*, 322 Conn. 247, 140 A.3d 927 (2016), however, the defendant modified his claim on appeal, stating in his supplemental brief that the court should not have allowed appointed counsel to withdraw because he failed to inform the defendant or the court, either in writing or orally, of the "reasoning" underlying his conclusion that there was no sound basis for the motion to correct an illegal sentence. Under the circumstances, we are not persuaded.

We begin our discussion with *Casiano*, in which our Supreme Court first established that an indigent defendant has a limited right to postconviction assistance of counsel in connection with a motion to correct an illegal sentence. *State* v. *Casiano*, supra, 282 Conn. 627–28.

Specifically, according to *Casiano*, "a defendant has a right to the appointment of counsel for the purpose of determining whether a defendant who wishes to file [a motion to correct an illegal sentence under Practice Book § 43-22] has a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." Id. There is no discussion in *Casiano*, however, about what particular procedure should be followed by counsel, or by the trial court, if counsel appointed pursuant to *Casiano* determines that there is no sound basis for a motion to correct an illegal sentence, including how such a determination should be communicated to counsel's client and to the court.

Recently, however, in *State* v. *Francis*, supra, 322 Conn. 247, our Supreme Court clarified the procedures that should be followed before a court may allow counsel appointed pursuant to *Casiano* to withdraw from representation. Our Supreme Court first rejected the opinion of this court, as set forth in *State* v. *Francis*, 148 Conn. App. 565, 569, 86 A.3d 1059 (2014), rev'd, 322 Conn. 247, 140 A.3d 927 (2016), that courts and appointed counsel should be required to follow *Anders*-like procedures before counsel can be permitted to withdraw.[10] *State* v. *Francis*, supra, 322 Conn. 251; see also *Anders* v. *California*, 386 U.S. 738, 744, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967) (establishing procedures for withdrawal of indigent defendant's appointed counsel in direct criminal appeals). Such procedures arguably could have included the requirements that counsel file a so-called "*Anders* brief," in which counsel would refer to anything in the record that might arguably support the defendant's position, and that the trial court make its own evaluation, independent of counsel's, regarding the merits of the defendant's claim that his sentence either is illegal or was imposed in an illegal manner.

Our Supreme Court in *Francis* held, however, that "the *Anders* procedure is not strictly required to safeguard the defendant's statutory right to counsel in the context of a motion to correct an illegal sentence." *State* v. *Francis*, supra, 322 Conn. 251. The court reasoned that *Anders* procedures were established to protect a criminal defendant's constitutional right to counsel on a first appeal, and that a defendant's right to appointed counsel in proceedings on a motion to correct an illegal sentence is not constitutional but statutory in nature, and, thus, does not warrant the same level of protection. Id., 262–63; see also *Pennsylvania* v. *Finley*, 481 U.S. 551, 559, 107 S. Ct. 1990, 95 L. Ed. 2d 539 (1987) (explaining that "full panoply of procedural protections that the [c]onstitution requires . . . at trial and on first appeal" are not needed when state elects

to provide legal assistance to indigent defendants in postconviction proceedings). The court in *Francis* reasoned, in part, that unlike the varied and often complex issues that arise in direct criminal appeals, the issues that can be raised in a motion to correct an illegal sentence are far more limited and straightforward in nature,[11] and "the potential merits of such a motion frequently will be apparent to the court and appointed counsel from a simple review of the sentencing record." *State* v. *Francis*, supra, 265.

As to the appropriate procedure to be followed, the Supreme Court in *Francis* stated as follows: "[If] an indigent defendant requests that counsel be appointed to represent him in connection with the filing of a motion to correct an illegal sentence, the trial court must grant that request for the purpose of determining whether a sound basis exists for the motion. See *State* v. *Casiano*, supra, 282 Conn. 627. If, after consulting with the defendant and examining the record and relevant law, counsel determines that no sound basis exists for the defendant to file such a motion, he or she must inform the court and the defendant of the reasons for that conclusion, which can be done either in writing or orally. If the court is persuaded by counsel's reasoning, it should permit counsel to withdraw and advise the defendant of the option of proceeding as a self-represented party." (Footnote omitted.) *State* v. *Francis*, supra, 322 Conn. 267–68.

In the present case, unlike in *Francis*, the court properly appointed counsel in accordance with *Casiano* to review the motion after the defendant filed it with the court and prior to any hearing on the merits of the motion. Counsel subsequently indicated to the court orally on the record that he had reviewed the motion, had researched all issues raised by the defendant, and had spoken with the defendant about the motion prior to reporting back to the court regarding his *Casiano* review.[12] There is no indication that counsel failed to acted within the bounds of professional responsibility in both evaluating the motion as filed by the defendant and identifying any meritorious claim not raised in that motion. See *Stephen S.* v. *Commissioner of Correction*, 134 Conn. App. 801, 810, 40 A.3d 796 (counsel strongly presumed to have exercised reasonable professional judgment in making all significant decisions), cert. denied, 304 Conn. 932, 43 A.3d 660 (2012). Counsel indicated that, on the basis of this review, he had determined that there was no sound basis for pursuing the defendant's motion to correct an illegal sentence.

It is true that counsel did not provide to the court a detailed discussion or legal analysis of the soundness of the defendant's claims. Nevertheless, in light of the generally limited scope of a motion to correct as recognized in *Francis*, we are not persuaded that this lacuna constitutes reversible error under the unique circum-

stances of this case. As discussed more fully in part II of this opinion, a review of the motion and the attached relevant sentencing transcripts reveals that, on its face, the defendant's motion lacks a sound basis to proceed because, among other things, it fails to recognize or challenge the fact that the defendant violated his *Garvin* agreement by failing to appear for his original sentencing hearing, which violation, in and of itself, exposed him to the sentence imposed by the court. The court had a copy of the defendant's motion before it and had an opportunity to review it, along with its attachments, which include transcripts of the proceedings before Judge Damiani, and the court file of the underlying sentencing record. As the court in *Francis* predicted, the potential merits of a motion to correct an illegal sentence often will be readily apparent from a simple review of the record. See *State* v. *Francis*, supra, 322 Conn. 265. Here, the court was in a position to evaluate independently the nature of the claims raised in the motion and, if necessary, to question counsel regarding the reasoning underlying his no sound basis determination. On the basis of the unique record presented here, we are persuaded that counsel's reasoning for his no sound basis determination, although not fully articulated, was readily apparent to all from the face of the record, and it would elevate form over substance to conclude that a remand is necessary to vindicate the newly envisioned procedure set forth in *Francis*.[13] Accordingly, we conclude that the trial court properly accepted counsel's determination that there was no sound basis for the defendant's motion and permitted him to withdraw from further representation of the defendant.

## II

Turning to the merits of the defendant's motion to correct an illegal sentence, the defendant also claims on appeal that the court improperly determined that his sentence had not been imposed in an illegal manner and, thus, improperly dismissed his motion. The defendant asserts that the court mistakenly relied upon *State* v. *Huey*, supra, 199 Conn. 121, which the defendant maintains is irrelevant to his claim that his sentence was imposed in an illegal manner. Specifically, the defendant contends that rather than merely considering the three pending arrest warrants as factors in crafting an appropriate sentence, the court, in essence, sentenced him for the robberies alleged in those warrants. The state counters that the court properly relied on *Huey* in determining that the sentencing court had not imposed the defendant's sentence in an illegal manner in that the court properly considered the defendant's subsequent criminal conduct as a factor in increasing his sentence, along with his failure to appear for sentencing. The state further contends that the defendant's argument that he was sentenced on the unexecuted arrest warrants at that time simply is belied by the

record. We agree with the state.

We begin with general legal principles, including our standard of review. "[T]he jurisdiction of the sentencing court terminates once a defendant's sentence has begun, and, therefore, that court may no longer take any action affecting a defendant's sentence unless it expressly has been authorized to act. . . . Practice Book § 43-22, which provides the trial court with such authority, provides that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner. An illegal sentence is essentially one [that] either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . [A] defendant may challenge his or her criminal sentence on the ground that it is illegal by raising the issue on direct appeal or by filing a motion pursuant to § 43-22 with the judicial authority, namely, the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *Tabone*, 279 Conn. 527, 533–34, 902 A.2d 1058 (2006). "Ordinarily, a claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard." Id., 534.

In *State* v. *Huey*, supra, 199 Conn. 126–27, our Supreme Court described the broad discretion that a sentencing court has in crafting a sentence and discussed the type of information that a sentencing court properly may consider in imposing a sentence within statutory limits. The court stated in part: "[I]f a sentence is within statutory limits it is not generally subject to modification by a reviewing court. . . . A sentencing judge has very broad discretion in imposing any sentence within the statutory limits and in exercising that discretion he may and should consider matters that would not be admissible at trial. . . . To arrive at a just sentence, a sentencing judge may consider information that would be inadmissible for the purpose of determining guilt . . . evidence of crimes for which the defendant was indicted but neither tried nor convicted . . . evidence bearing on charges for which the defendant was acquitted . . . and evidence of counts of an indictment which has been dismissed by the government." (Citations omitted; internal quotation marks omitted.) Id., 126. A trial court's discretion is not completely unfettered; however, "[a]s long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." Id., 127.

Turning to the facts of the present case, the defendant originally entered into a *Garvin* agreement in which he agreed to plead guilty in exchange for a relatively

favorable sentence that, assuming he complied with the terms of the agreement, imposed, at most, fourteen years of unsuspended prison time. That plea was specifically conditioned upon his promises both to appear for sentencing and to not be arrested with probable cause for any additional criminal conduct. The defendant does not claim on appeal that he failed to understand the terms of his *Garvin* agreement, and he does not challenge the court's factual findings at sentencing that he violated *both* conditions of that agreement. As the sentencing court correctly explained at the time it took the defendant's plea, his potential exposure if he violated the terms of the *Garvin* agreement amounted to forty-two and one-half years of incarceration, of which ten were mandatory. Thus, the court's sentence of a flat twenty-two years of incarceration fell well within the legal statutory limits and the defendant's *Garvin* agreement.

The defendant nevertheless argues that the court unlawfully sentenced him because it considered and utilized the three unserved arrest warrants in determining his sentence and suggests that, for all intents and purposes, the court sentenced him for the robberies alleged in those warrants despite the fact that, at the time, he had not been arrested on any new charges. The defendant's arguments lack merit for several reasons.

First, even if we were to conclude that, because the three pending warrants had not yet been served, the defendant technically had not breached the "no new arrests" provision of the *Garvin* agreement, it is undisputed that the defendant also had failed to comply with the *Garvin* agreement by failing to appear for the originally scheduled sentencing hearing. On the basis of that independent breach alone, the defendant forfeited his right to be sentenced under the *Garvin* agreement to no more than fourteen years of unsuspended prison time. Having clearly violated at least one aspect of the *Garvin* agreement, the defendant was now exposed to a possible sentence that included up to forty-two and one-half years of incarceration. Any sentence imposed by Judge Damiani up to that amount based on the defendant's failure to appear for sentencing was expressly permitted by the *Garvin* agreement and, thus, the sentence of twenty-two years was not imposed in an illegal manner.

Second, the defendant makes much of the fact that the three arrest warrants had not yet been served on him at the time of sentencing. The defendant, however, does not challenge Judge Fasano's findings that he was fully aware of the warrants and the allegations that he had committed three additional robberies. It is undisputed that the defendant understood that, pursuant to the *Garvin* agreement, he was obligated to avoid an arrest on any additional offense for which there was probable cause. In essence, the defendant understood

that if he wanted to secure the favorable benefits of the *Garvin* agreement, he could not engage in any additional criminal conduct prior to sentencing. The defendant elected not to challenge whether the three warrants were supported by probable cause; see *State* v. *Stevens*, supra, 278 Conn. 1; and the sentencing court affirmed that they were. We agree with Judge Fasano's assessment that it would elevate form over substance, for purposes of determining whether the defendant had violated the terms of his *Garvin* agreement, to recognize any significance between having three valid warrants pending and actually having been arrested on those warrants.

Third, as the trial court properly concluded in rejecting the motion to correct an illegal sentence, it was entirely appropriate under the broad discretion afforded to sentencing courts, as set forth in *State* v. *Huey*, supra, 199 Conn. 126–27, for the sentencing judge to have considered the pending arrest warrants and affidavits in deciding what sentence to impose in light of the defendant's failure to comply with the terms of the *Garvin* agreement. The defendant waived his right at the sentencing hearing to challenge whether those warrants were supported by probable cause, and he did not raise any challenge at sentencing concerning the authenticity or reliability of the three warrants. The defendant advanced no argument that the arrest warrants fell outside of the information properly considered by the sentencing court. Accordingly, there is nothing in the record before us to suggest that the warrants lacked the requisite minimal indicium of reliability necessary to be considered at sentencing.

Finally, on the basis of our thorough review of the record, including the transcripts provided, we are satisfied that the court did not, as asserted by the defendant, render de facto sentences on the robbery charges associated with the new arrest warrants. It only considered the three additional robbery warrants in deciding to increase the defendant's sentence on the his conviction of the original robbery and persistent offender charges. The defendant was sentenced on those additional robbery charges only after he formally was arrested and had voluntarily entered *Alford* pleas.

In arguing otherwise, the defendant relies on certain statements made by the sentencing judge at his arraignment and sentencing on the three robbery charges. In particular, the defendant references the court's statement that it had "already given [him] the time for these three robberies when [it] upped [him] from fourteen to twenty-two." Although we are aware that the colloquial language used by the court, read in isolation, could be misunderstood, we disagree with the defendant's interpretation that the eight year increase in his sentence on the original robbery and persistent offender charges included additional time directly associated

with the three subsequent robberies. In context, the court merely was attempting to explain the basis for its decision to render relatively short and concurrent sentences for those later robberies following the defendant's *Alford* pleas. Because the court already had factored in the defendant's additional criminal conduct at the time it imposed the earlier sentence, it exercised its discretion to limit the additional sentences accordingly. There is simply no merit to the defendant's claim that the court sentenced him for the robberies prior to taking his plea on those charges.

We note that the trial court, having properly rejected the arguments raised in the defendant's motion on their merits, technically should have denied rather than dismissed the motion to correct. Only if a defendant fails to state a claim that brings a motion within the purview of Practice Book § 43-22 should a court dismiss the motion for lack of jurisdiction. Here, the court never made a determination that the motion was jurisdictionally defective. Moreover, the defendant's motion did not merely raise a collateral attack on the judgment of conviction, but, on its face, attacked the legality of the sentence and/or the manner in which his sentence was imposed. Accordingly, the motion properly invoked the court's jurisdiction, and, thus, the form of the judgment is incorrect. See *State* v. *McClean*, 167 Conn. App. 781, 785, 144 A.3d 490 (2016).

The form of the judgment is improper, the judgment dismissing the defendant's motion to correct an illegal sentence is reversed and the case is remanded with direction to render judgment denying the defendant's motion.

In this opinion the other judges concurred.

* Following oral argument, we stayed this appeal sua sponte, absent objection by the parties, pending our Supreme Court's decision in *State* v. *Francis*, 322 Conn. 247, 140 A.3d 927 (2016). The issue before the court in *Francis* was whether this court properly had determined that a trial court must follow procedures similar to those set forth in *Anders* v. *California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967), before permitting counsel to withdraw from postconviction representation of a defendant in proceedings regarding a motion to correct an illegal sentence. On August 3, 2016, following the official release of the Supreme Court's decision in *Francis*, we lifted our stay and provided the parties with an opportunity to submit simultaneous supplemental briefs addressing the effect, if any, of the *Francis* decision on the claims raised in this appeal.

[1] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 7, 895 A.2d 771 (2006).

[2] The defendant also admitted to a violation of probation. The defendant previously was convicted in 2003 of robbery in the first degree for which he received a sentence of four years suspended after eighteen months, followed by thirty months of probation.

[3] The court explained the terms as follows: "If you're not here on that date or if you pick up a new arrest, I read the police report, there's probable cause for the arrest, you're exposed to forty-two and one half years, of which ten is mandatory. Understand that?" To which, the defendant responded: "Yes, Your Honor." The court reiterated: "Make sure you're here and no new arrests."

[4] In *State* v. *Stevens*, 278 Conn. 1, 11–13, 895 A.2d 771 (2006), our Supreme

Court held that an enhanced sentence that is imposed on the basis of a defendant's arrest on new charges prior to sentencing in violation of a *Garvin* agreement does not violate due process provided that the defendant is given an opportunity to contest whether any such subsequent arrest was supported by probable cause. See also *Council* v. *Commissioner of Correction*, 286 Conn. 477, 483–84 n.9, 944 A.2d 340 (2008).

[5] At that time, the three arrest warrants had not been served; however, the state later executed the warrants and charged the defendant with three counts of first degree robbery in violation of § 53a-134 (a) (4).

[6] We note that Judge Damiani incorrectly recalled the precise terms of the *Garvin* agreement, which had an upper limit of eighteen years, not twenty. The court's failure to recall the precise terms, however, was inconsequential to the proceedings then before the court, and the error has not been raised by the parties in the present appeal.

[7] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970).

[8] Pursuant to our Supreme Court's decision in *Casiano*, "[a]lthough the [federal constitutional] right to appointed counsel extends to the first appeal [as] of right, and no further . . . in Connecticut, a defendant who wishes to file a motion to correct an illegal sentence has a [statutory] right [under § 51-296 (a)] to the appointment of counsel for the purpose of determining whether . . . [there exists] a sound basis for doing so. If appointed counsel determines that such a basis exists, the defendant also has the right to the assistance of such counsel for the purpose of preparing and filing such a motion and, thereafter, for the purpose of any direct appeal from the denial of that motion." (Citation omitted; footnote omitted; internal quotation marks omitted.) *State* v. *Francis*, 322 Conn. 247, 260, 140 A.3d 927 (2016).

[9] The January 30, 2013 colloquy between the court and the parties was as follows:

"Attorney Yamin: Good morning, Joseph Yamin for Mr. Yates . . . . As Your Honor, as discussed in chambers, I was appointed pursuant to *State* v. *Casiano* to review Mr. Yates' motion to correct an illegal sentence. I have done so. I researched the issues brought up in that motion. At this point in time, I do not find a sound basis for going forward.

"The Court: So Attorney [Yamin], have you already talked to the [defendant]?

"Attorney Yamin: I have, Your Honor. I spoke with him yesterday.

"The Court: All right. Mr. Yates, that doesn't foreclose you from going forward at some point. If you want to continue for the purposes of a hearing, but Attorney [Yamin] has found there's no merit under the guidelines with respect to the motion [to correct an] illegal sentence.

The first issue is always whether or not this court even has jurisdiction. At this juncture Attorney [Yamin], after a *Casiano* review, finds there's no merit. So the motion, if this is by way [of] a motion to withdraw, that would be granted.

"Attorney Yamin: He wants me to make clear, Your Honor, that I'm finding there's no sound basis for me to go forward as his attorney.

"The Defendant: There could be merit but there's not foundation.

"The Court: What's that?

"The Defendant: There could be merit but not a sound basis.

"The Court: After his review he found that there's no merit to the claim, I'm assuming that's what you're saying.

"Attorney Yamin: Pursuant to *Casiano*, Your Honor, I'm finding no reason for me to go forward, that's correct.

"The Court: All right. So, Mr. Yates, I'm going to put this down for a hearing, if you wanted to go forward.

"The Defendant: Yes, Your Honor. I would want to go forward with this. I will ask for a two month continuance.

"The Court: Well, it's going to be longer than that.

"The Defendant: Longer than that. I need time to prepare to go for the case law to find everything on illegal sentence.

"The Court: Not a problem.

"The Defendant: And adequate time.

"The Court: I'm going to put you down for March 13 at 2 p.m.

"The Defendant: All right. Thank you very much."

Although the court gave the defendant a six week continuance after indicating that the continuance was "going to be longer" than the two months requested, the defendant does not raise this as a claim of error on appeal or suggest that he needed additional time to prepare.

[10] Although our Supreme Court reversed the decision of this court, it nevertheless also determined that the trial court had failed to comply properly with *Casiano* in the first instance by not appointing counsel to review

the defendant's motion to correct an illegal sentence to determine whether there was a sound basis for bringing the motion. *State* v. *Francis*, supra, 322 Conn. 259. Counsel in *Francis* was "advised of the defendant's motion by the [court clerk] prior to the case being called, and he reviewed the motion and certain other, unspecified files in his office, never describing in detail to the court the substance of any discussions with the defendant about the claims he wished to make in his motion." (Internal quotation marks omitted.) Id., 268. The Supreme Court determined that the trial court's error was not harmless because the defendant may have been entitled to assistance in preparing the motion, and because such assistance might have aided the defendant in identifying a meritorious claim. Id., 269. The court remanded the case to this court with direction to remand the case to the trial court so that counsel could be appointed to represent the defendant in connection with his motion to correct an illegal sentence. Id., 270.

[11] "An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is internally contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates [a] defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or his right to be sentenced by a judge relying on accurate information or considerations solely in the record, or his right that the government keep its plea agreement promises . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Parker*, 295 Conn. 825, 839, 992 A.2d 1103 (2010).

[12] The record indicates that there was also some discussion between the parties and the court in chambers, but no details of that discussion were set forth on the record, and, thus, the record is unclear whether the merits of the motion or the rationale for counsel's sound basis determination were discussed at that time.

[13] It is important to note that counsel and trial courts should heed the importance of ensuring that the record contains more than a conclusory statement that there is no sound basis for a motion to correct an illegal sentence before permitting counsel to withdraw. As our Supreme Court stated in *Francis*, counsel should provide the reasons for such a conclusion both to the court and to the client.