******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

# STATE OF CONNECTICUT *v.* GAYLORD SALTERS
## (AC 41597)

Alvord, Bright and Eveleigh, Js.

*Syllabus*

The defendant, who had been convicted of one count of assault of an employee of the Department of Correction, appealed to this court from the judgment of the trial court denying his motion to correct an illegal sentence. The defendant claimed, inter alia, that the trial court abused its discretion because the sentencing court substantially relied on the state's materially inaccurate information at sentencing. *Held* that the trial court did not abuse its discretion when it denied the defendant's motion to correct an illegal sentence: the defendant could not establish that the sentencing court relied on certain claimed inaccurate information in the state's sentencing memorandum and an attached affidavit from a police detective that the defendant was a leader of a gang and that he was the subject of an active investigation by North Carolina law enforcement for ongoing criminal activity, as the police detective's sworn testimony far exceeded the minimum indicia of reliability required of information relied on by a court in sentencing and the defendant offered no evidence refuting the state's claims regarding his affiliation with the gang or that undermined the state's claim that he was a leader of the gang at the time he was sentenced; moreover, the record confirmed the trial court's finding that the sentencing court did not specifically refer to any information from a North Carolina police detective in its sentencing remarks, and the trial court discussed and applied correctly the appropriate standard of actual reliance in that it determined appropriately that there was nothing in the record that indicated that the sentencing court relied on information regarding the defendant's activities in North Carolina to fashion the defendant's sentence; furthermore, because the defendant failed to establish that the sentencing court relied on inaccurate or unreliable information, his other claims on appeal necessarily failed.

Argued September 17—officially released December 3, 2019

*Procedural History*

Substitute information charging the defendant with two counts of the crime of assault of an employee of the Department of Correction, brought to the Superior Court in the judicial district of New Haven and tried to the jury before *Devlin, J.*; verdict and judgment of guilty of one count of assault of a Department of Correction employee, from which the defendant appealed to this court, which affirmed the judgment; thereafter, the court, *Clifford, J.*, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*Deborah G. Stevenson*, assigned counsel, for the appellant (defendant).

*Melissa Patterson*, assistant state's attorney, with whom, on the brief, were *Patrick J. Griffin*, state's attorney, and *Adrienne Russo*, assistant state's attorney, for the appellee (state).

*Opinion*

BRIGHT, J. The defendant, Gaylord Salters, appeals from the judgment of the trial court, *Clifford, J.*, denying his motion to correct an illegal sentence. On appeal, the defendant claims that (1) the trial court abused its discretion by denying his motion to correct an illegal sentence because the sentencing court substantially relied on the state's materially inaccurate information at sentencing, (2) the trial court applied an incorrect legal standard regarding the reliability of testimonial evidence, (3) the use of materially inaccurate information at the defendant's sentencing hearing was structural error, and (4) the prosecutor's use of the allegedly inaccurate information constituted prosecutorial impropriety. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our resolution of this appeal. On November 24, 1994, while incarcerated at the Manson Youth Institution of the Connecticut Department of Correction for a prior offense, the defendant, who was nineteen years old at the time, was arrested and charged with two counts of assault on a correction officer in violation of General Statutes (Rev. to 1993) § 53a-167c. More than five years later, on March 17, 2000, when the defendant was not incarcerated, the state filed an information in connection with the defendant's 1994 alleged assaults. The defendant pleaded not guilty to the charges and proceeded to trial.[1] Following a jury trial, the defendant was convicted of one of the counts of assault and acquitted of the other.[2] On May 25, 2001, the court sentenced the defendant to ten years of incarceration, execution suspended after five years, with five years of probation. On July 5, 2017, the defendant filed a motion to correct an illegal sentence, alleging that the sentencing court relied on inaccurate information submitted by the state.[3] A hearing took place on the defendant's motion on October 20, 2017. On November 1, 2017, the court denied the defendant's motion, concluding that the defendant (1) failed to establish that the state presented inaccurate information to the sentencing court and (2) failed to establish that the sentencing court relied on the purported inaccuracies. This appeal followed. Additional facts will be set forth as necessary.

We begin with our standard of review and the relevant legal principles. "[I]t is axiomatic that [t]he judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner . . . . Practice Book § 43-22. A motion to correct an illegal sentence constitutes a narrow exception to the [common-law] rule that, once a defendant's sentence has begun, the authority of the sentencing court to modify that sentence terminates. . . . Indeed, [i]n order for the court to have jurisdiction over a motion to correct an illegal sentence after the sentence has been executed, the sentencing

proceeding [itself] . . . must be the subject of the attack." (Internal quotation marks omitted.) *State* v. *Walker*, 187 Conn. App. 776, 783, 204 A.3d 38, cert. denied, 331 Conn. 914, 204 A.3d 703 (2019).

"We review the [trial] court's denial of [a] defendant's motion to correct [an illegal] sentence under the abuse of discretion standard of review. . . . In reviewing claims that the trial court abused its discretion, great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness. . . . We will reverse the trial court's ruling only if it could not reasonably conclude as it did. . . .

"An illegal sentence is essentially one which either exceeds the relevant statutory maximum limits, violates a defendant's right against double jeopardy, is ambiguous, or is inherently contradictory. . . . Sentences imposed in an illegal manner have been defined as being within the relevant statutory limits but . . . imposed in a way which violates the defendant's right . . . to be addressed personally at sentencing and to speak in mitigation of punishment . . . or *his right to be sentenced by a judge relying on accurate information* or considerations solely in the record, or his right that the government keeps its plea agreement promises . . . ." (Citations omitted; emphasis added; internal quotation marks omitted.) *State* v. *Logan*, 160 Conn. App. 282, 287–88, 125 A.3d 581 (2015), cert. denied, 321 Conn. 906, 135 A.3d 279 (2016).

The defendant first claims that the trial court abused its discretion by denying his motion to correct an illegal sentence. More specifically, the defendant contends that he established—both in his motion and at the hearing—that the state presented to the sentencing court materially inaccurate information that the court relied on in sentencing. We disagree.

The following additional facts are relevant to our resolution of the defendant's claim on appeal. On May 23, 2001, after the defendant's conviction but prior to sentencing, Assistant State's Attorney James Clark filed a sentencing memorandum on behalf of the state. In its sentencing memorandum, the state asserted that the defendant was a leader of a violent New Haven street gang known as the Island Brothers. The state further argued that the defendant's continued affiliation with gang activity and the sale of narcotics directly contradicted any claim by the defendant in the presentence investigation report that he was changing his life for the better. Attached to the state's sentencing memorandum was an affidavit signed on May 10, 2001, by Detective Richard Pelletier, of the New Haven Police Department. According to the affidavit, Pelletier was qualified as an expert witness on New Haven gangs, particularly the Island Brothers, and he averred that the defendant was one of the operational leaders of the Island Brothers. Pelletier also averred that he had received information

from Donald Eck, a detective in Greenville, North Carolina, that North Carolina authorities actively were investigating ongoing narcotic sales involving the defendant and other members of the Island Brothers.[4] Finally, Pelletier averred that Eck had informed him of the defendant's involvement in a 1997 gang related shootout in Wilmington, North Carolina.

The court conducted the defendant's sentencing hearing on May 25, 2001. At the sentencing hearing, the court reflected on the circumstances of the defendant's conviction[5] before commenting on his prior conduct and criminal history.[6] The court then addressed the state's information regarding the defendant's affiliation with the Island Brothers. "On the negative side is this. . . . [T]his question about the Island Brothers. It's not Al Capone justice where just because someone thinks you're a member of some organization that . . . has a negative connotation all of a sudden you max somebody out. . . . I don't subscribe [to] that.

"On the other hand, belonging to an organization like that, they've got a reputation, and everybody knows their reputation. So if you choose to affiliate yourself with them, it's not like having a job at some place where you go to work every day from nine to five, come home, and bring your paycheck home. . . . So, to that extent, [it] . . . doesn't suggest a lot of positive things, but I don't see that as a major point." The court, thereafter, sentenced the defendant. The defendant did not object during sentencing to the state's sentencing memorandum or to the information contained therein.

On July 5, 2017, the defendant filed a motion to correct an illegal sentence, arguing that the court's sentence was predicated on the state's materially inaccurate information and, therefore, improper as a matter of law. In particular, the defendant claimed that Pelletier's statements in his affidavit regarding the defendant's affiliation with the Island Brothers and his purported criminal activities in North Carolina were false. The defendant contended: "[T]he sentencing court stated its view was that to some extent the defendant would get the detriment of the negative things in his life at sentencing. Further, the sentencing court articulated its position that the state's allegation of gang affiliation and activity did not have a positive effect on its sentencing decision. The sentencing court then stated that it considered this inaccurate information in crafting its sentence. . . . Therefore, the inaccurate unreliable information contained in the state's sentencing memorandum and argument resulted in a procedural violation that was committed by the trial court and that materially impacted the sentence." (Citation omitted.)

In support of his argument, the defendant relied on correspondence and freedom of information requests between the Connecticut Public Defender's Office and the Greenville, North Carolina Police Department, the

Oak Island, North Carolina Police Department, the Leland, North Carolina Police Department, the Northwest, North Carolina Police Department, and the Brunswick County Sheriff's Office[7] regarding records concerning Eck, the defendant, and two other Island Brothers affiliates.[8] In his motion, the defendant argued: "At a minimum, the response from the director of human resources for the city of Greenville indicating that at no time did the city employ a Donald Eck, calls Detective Pelletier's veracity into question. Moreover, the lack of any record of any investigation into the defendant, Johnny Johnson, or Kwane Taylor by any North Carolina police department that employed an individual named Donald Eck, contradicts Detective Pelletier's statement that in 2001 he learned of 'active investigations' regarding these individuals."

The court, *Clifford, J.*, held a hearing on the defendant's motion to correct an illegal sentence on October 20, 2017. At the hearing, the defendant examined Pelletier regarding his affidavit and the assertions therein. Pelletier testified that he was surprised to hear that, contrary to his sworn statement, Eck was never employed with the Greenville Police Department. Additionally, Pelletier was unable to confirm with specificity when he had spoken with Eck about the defendant's alleged criminal activity in North Carolina. Despite averring initially that his communications with Eck happened in 2001, Pelletier later testified that he spoke with Eck during his work with the Connecticut police task force, which could have been anytime between 1995 and 1999. On cross-examination, Pelletier stated that he was more concerned with the information regarding the defendant's activities in North Carolina than he was with the specific police department that employed Eck.

The defendant also examined Clark regarding the sentencing memorandum and Pelletier's affidavit. Clark testified that he could not remember who drafted Pelletier's affidavit and whether the information therein was true. Clark further testified that the principal purpose of his sentencing memorandum was to refute the assertion in the presentence investigation report that the defendant was bettering his life and was no longer involved in gang activity.

After the hearing on the defendant's motion to correct an illegal sentence, the court, in a November 1, 2017 memorandum of decision, denied the motion. In its decision, the court noted that, although there may have been discrepancies in Pelletier's affidavit regarding the specific police agency that employed Eck, the letter from the Brunswick County Sheriff's Office confirmed that Eck, in fact, was employed in North Carolina with the Oak Island Police Department as part of a task force that assisted the Sheriff's Department. The court further noted that any discrepancies regarding Eck's involve-

ment, or lack thereof, in investigations concerning the defendant and other Island Brothers associates around May, 2001, did not render the sentencing memorandum or affidavit materially inaccurate because Pelletier testified at the hearing that his conversations with Eck could have taken place in the late 1990s.

To the extent that Eck and Pelletier had ongoing telephone discussions during the late 1990s regarding the defendant's criminal activity, the court found that the defendant's arrest in 1997 in Brunswick County, North Carolina, at least corroborated his presence there. Specifically, the court stated: "This court finds from this evidence that the information Detective Pelletier received from North Carolina occurred closer to 1999. The information concerning the defendant's activities in North Carolina was more important than which police agency the caller was employed by in that state. Besides the information from North Carolina, Detective Pelletier's affidavit also indicates his own expertise in the Island Brothers gang and the defendant's involvement with it." Finally, the court concluded that even if some of the information provided to the sentencing court was inaccurate, the defendant could not prove that the sentencing court materially relied on it in sentencing. The court stated: "The sentencing court did not specifically refer to any information from a Detective Eck or North Carolina in [its] sentencing remarks. It appears that the sentencing court discounted the value of any relevance of gang activity or the Island Brothers in the sentencing and did not rely on those claims to the detriment of the defendant."

The defendant now claims that the court improperly denied his motion to correct an illegal sentence because he established that the sentencing court relied on inaccurate information when sentencing him. We disagree.

"It is a fundamental sentencing principle that a sentencing judge may appropriately conduct an inquiry broad in scope, and largely unlimited either as to the kind of information he may consider or the source from which it may come. . . .

"Nevertheless, [t]he trial court's discretion . . . is not completely unfettered. As a matter of due process, information may be considered as a basis for a sentence only if it has some minimal indicium of reliability. . . . As long as the sentencing judge has a reasonable, persuasive basis for relying on the information which he uses to fashion his ultimate sentence, an appellate court should not interfere with his discretion." (Internal quotation marks omitted.) *State* v. *Robert S.*, 179 Conn. App. 831, 843–44, 181 A.3d 568, cert. denied, 328 Conn. 933, 183 A.3d 1174 (2018).

"[D]ue process precludes a sentencing court from relying on materially untrue or unreliable information in imposing a sentence. . . . To prevail on such a claim

as it relates to a [presentence investigation report] [a] defendant [cannot] . . . merely alleg[e] that [his report] contained factual inaccuracies or inappropriate information. . . . [He] must show that the information was *materially* inaccurate and that the [sentencing] judge *relied* on that information. . . . A sentencing court demonstrates actual reliance on misinformation when the court gives explicit attention to it, [bases] its sentence at least in part on it, or gives specific consideration to the information before imposing sentence." (Emphasis in original; internal quotation marks omitted.) *State* v. *Bennett*, 182 Conn. App. 71, 80–81, 187 A.3d 1200 (2018).

Applying these principles to the present case, we conclude that the court did not abuse its discretion in denying the defendant's motion to correct an illegal sentence. The defendant maintains that the state's sentencing memorandum and Pelletier's affidavit together contained material inaccuracies on which the sentencing court relied. The first is that the defendant was a leader of the Island Brothers. The second is that the defendant, in 2001, was the subject of an active investigation by North Carolina law enforcement for ongoing criminal activity. We will address each of these purported inaccuracies in turn.

The state, through Pelletier's sworn affidavit, presented to the trial court evidence of the defendant's involvement with the Island Brothers. According to the affidavit, Pelletier testified as a qualified expert witness on New Haven gang culture in November, 1999 and December, 2000. On both occasions, Pelletier testified that the defendant was involved in gang activity as a leader of the Island Brothers. Pelletier's sworn testimony far exceeds the minimum indicia of reliability required of information relied on by a court in sentencing. See *State* v. *Yates*, 169 Conn. App. 383, 403, 150 A.3d 1154 (2016) (concluding that trial court did not abuse discretion by denying motion to correct illegal sentence because sentencing court relied on pending arrest warrants and affidavits during sentencing), cert. denied, 324 Conn. 920, 157 A.3d 85 (2017). Conversely, the defendant offered no evidence refuting the state's claims regarding the defendant's affiliation with the Island Brothers.[9] Short of claiming that Pelletier's statements were uncorroborated and therefore inaccurate, the defendant did not present any evidence that undermined the state's claim that he was a leader of the Island Brothers at the time that he was sentenced. Although the defendant proffered his arrest records as evidence of his discontinued criminal activity after a 1998 conviction, those records alone do not render Pelletier's affidavit inaccurate or unreliable. Therefore, the defendant's argument as to the first claimed inaccuracy fails.

Turning to the second claimed inaccuracy, the defen-

dant did present evidence to the trial court that the statement in Pelletier's May 10, 2001 affidavit that "North Carolina authorities are actively investigating ongoing narcotics sales involving [the defendant] . . . and other members of the Island Brothers" was factually incorrect. In fact, the court found that Pelletier received information about the defendant from North Carolina "closer to 1999."

Nevertheless, the defendant's claim fails because he cannot establish that the sentencing court relied on the inaccurate information. The trial court concluded that the sentencing court did not rely on any inaccuracies relating to the information from North Carolina, noting that "[t]he sentencing court did not specifically refer to any information from a Detective Eck [of] North Carolina in its sentencing remarks." The record confirms the trial court's finding. The defendant responds to this dearth of evidentiary support by claiming that the trial court misapplied the reliance standard by only weighing whether the sentencing court "specifically referred" to the challenged information as opposed to giving "explicit attention" to it. We fail to see any material difference in these two phrases. Furthermore, in its memorandum of decision denying the defendant's motion to correct an illegal sentence, the trial court discussed and applied correctly the appropriate standard. As stated by the trial court, actual reliance requires that the sentencing court either give explicit attention to the information, base its sentence, at least in part, on the information, or give specific consideration to the information before imposing a sentence. See *State* v. *Bennett*, supra, 182 Conn. App. 80–81. The trial court applied this standard and determined appropriately that there was nothing in the record that indicated that the sentencing court relied on information regarding the defendant's activities in North Carolina to fashion the defendant's sentence. Therefore, the trial court did not abuse its discretion when it denied the defendant's motion to correct an illegal sentence.

We have considered the three remaining issues and conclude that because the defendant failed to establish that the sentencing court relied on inaccurate or unreliable information, those claims necessarily fail.[10] Consequently, they warrant no further discussion.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The state filed nearly identical informations on March 7, 2001, and March 9, 2001, and the defendant was tried based on the March 9, 2001 information.

[2] The first count was in connection with the defendant's alleged assault on Officer Patrick Marangone and the second count was in connection with the defendant's alleged assault on Officer Patrick Sampson. The defendant was found guilty of assaulting Marangone.

[3] The defendant was convicted in 2002 on unrelated charges arising out of a 1996 shooting. The court in that case sentenced the defendant to forty years of imprisonment, execution suspended after twenty-four years, with five years of probation. That sentence was consecutive to the defendant's 2001 sentence at issue in this case.

[4] Between 1997 and 1998, the defendant lived in North Carolina.

[5] The court stated that "[w]hatever happened between Officer Sampson and Officer Frazier started out as their dispute . . . which [should have] and [could have] been resolved there. . . . [T]he jury heard the evidence and they by their verdict essentially ruled that you had no business leaving your cell to enter into that dispute. It wasn't with you. . . . [A]nd the jury found that you caused physical injury to Officer Marangone. They acquitted you on the charge involving Officer Sampson. You may disagree with that. The state may disagree with that. [But for] today everybody's got to take that as what happened."

[6] The court stated: "I think people should get the benefit of . . . the positive things in their life and, to some extent, the detriment of the negative things in their life at sentencing. You present a mixed picture. You present someone who is young when this happened. You present someone who, although charged with a serious crime, only has a misdemeanor conviction after this happened. . . . And you present yourself with someone who has declared an intent to maybe . . . make some different choices. . . . That's on the positive side. My job is to take that into consideration and I'm going to do that."

[7] In a letter from the City of Greenville dated December 5, 2013, the director of human resources stated that "the City of Greenville has not employed nor currently employs an individual by the name of Donald Eck."

In a letter from the Oak Island Police Department dated October 23, 2013, the chief of police stated that "[a] search of our records management system did not reveal any investigation/cases involving the [defendant]."

In a letter from the Leland Police Department dated October 18, 2013, the office's administrative assistant stated that "I have reviewed all case files that we have and completed a thorough search on the individuals you requested. Unfortunately I have been unable to locate anything on [the defendant]."

In a letter from the Northwest Police Department dated November 19, 2013, the sergeant stated that "Donald [Eck] is [no] longer with the Northwest Police Department and there are no files in or around May 2001 relating to [the defendant] . . . ."

In a letter from the Brunswick County Sheriff's Office dated January 22, 2014, the office's administrative assistant stated that "Donald Eck has not been employed by the Brunswick County Sheriff's Office. He was employed by the Oak Island Police Department and was part of a task force that assisted the Sheriff's Office during the date in question."

[8] The two other Island Brothers affiliates were Kwane Taylor and the defendant's brother, Johnny Johnson. Pelletier stated in his May 10, 2001 affidavit that Kwane Taylor—along with the defendant—served as an operational leader of the Island Brothers. Pelletier added that, according to Eck, North Carolina authorities were investigating ongoing narcotics sales involving Taylor, Johnson, and the defendant, as well as a 1997 shootout in Wilmington, North Carolina involving Taylor and the defendant.

[9] The defendant did argue on appeal that the state's information was inaccurate insofar as it was not based on evidence solely in the record. "[The state] also tried to persuade the court of the defendant's alleged leadership in the street gang by referring to other considerations not solely in the record. [The state] specifically referred to some photos that purportedly were entered into the [*Adams* v. *Commissioner of Correction*, 309 Conn. 359, 71 A.3d 512 (2013)] trial involving the other individuals and the defendant's brother." The state referenced these photos before the sentencing court to further corroborate Pelletier's testimony. "One of the things . . . to take note of is that although he was representing a different member of the group, Darcus Henry, who was also part of the leadership of that gang at the trial in 1999 from which the transcript is taken, John Williams was there and elected not to challenge the gang testimony by Detective Pelletier. I would submit that the reason he didn't challenge it was because of the detail that was available. There are literally dozens of photographs of this group together. There are photographs in that case that came into evidence of [the defendant] with other known members of the gang including Darcus Henry and . . . Sean Adams . . . making gang symbols, showing the Island Brothers sign . . . it's my belief, that that's why the cross wasn't done. . . . But there is a lot of information in the hands of the gang people at the New Haven Police Department that supports Detective Pelletier's testimony and his sworn affidavit done just a couple of weeks ago asserting that [the defendant] is a leader of this gang." The defendant argued in his principal appellate brief that the state made reference to the photographs

to imply that the defendant was a member of the Island Brothers merely by association. Because the state's information was based on evidence not solely within the record, the defendant argues that the information is inherently inaccurate and renders any subsequent reliance on it improper. This argument fails for two reasons. First, a sentencing court is permitted to consider—and often times does—information that may not be admissible at trial under the rules of evidence. See *State* v. *Yates*, supra, 169 Conn. App. 400. Thus, the mere fact that the photographs allegedly depicting the defendant with members of the Island Brothers were not entered into evidence before the sentencing court does not render the state's information inaccurate. Second, and more importantly, because the record does not reflect that the state actually presented any such photographs to the court and the court did not mention them in its sentencing remarks, the defendant cannot establish that the court relied on the photographs during sentencing, which is necessary for him to prevail on this claim even if the information was inaccurate. See *State* v. *Robert S.*, supra, 179 Conn. App. 844.

[10] In addition, the defendant's claim that we should abandon the minimal indicium of reliability standard for information considered by a sentencing court in favor of a more rigorous standard is rejected. The minimal indicium of reliability standard was set forth by our Supreme Court in *State* v. *Huey*, 199 Conn. 121, 127, 505 A.2d 1242 (1986), and has been consistently followed ever since. See *State* v. *Pena*, 301 Conn. 669, 683, 22 A.3d 611 (2011); *State* v. *Yates*, supra, 169 Conn. App. 400–403. In fact, in *Pena*, our Supreme Court explicitly declined the defendant's request that it overrule *Huey*. *State* v. *Pena*, supra, 684. As an intermediary court of appeals, we are bound by our Supreme Court precedent and may not disregard or overturn it.

---